Strafford
No. 2005-140

BOULDERS AT STRAFFORD, LLC

v.

TOWN OF STRAFFORD

Argued: January 19, 2006
Opinion Issued: June 13, 2006

634

*Donahue, Tucker & Ciandella, P.L.L.C.*, of Exeter (*Robert M. Derosier* on the brief and orally), for the plaintiff.

*Mitchell & Bates, P.A.*, of Laconia (*Walter L. Mitchell* and *Laura A. Spector* on the brief, and *Mr. Mitchell* orally), for the defendant.

BRODERICK, C.J. The defendant, Town of Strafford (town), appeals the decision of the Superior Court (*Fauver*, J.) granting the petition for declaratory judgment filed by the plaintiff, Boulders at Strafford, LLC (Boulders), seeking to declare a section of the town's zoning ordinances unconstitutional. *See* STRAFFORD ZONING & LAND USE ORDS., SUBDIV. REGS., NON-RESID. SITE PLAN REGS., & BUILDING REGS., ch. 1, § 4.1(F) (2003) (STRAFFORD ZONING ORD. 1.4.1(F) or Section 1.4.1(F)). We vacate and remand.

I

The record supports the following. Boulders owns or has the development rights to approximately 300 acres in Strafford. In the summer of 2003, Boulders presented alternative design proposals for residential development of the property to the Strafford Planning Board (board). The two proposals were a conventional design and a conservation/open space proposal, yielding approximately fifty-eight and sixty-six subdivided lots, respectively.

Both proposals required that homes built on the lots contain individual septic systems. Section 1.4.1(F) states:

> The minimum set back distance for the placement of any part of a new sewerage system location from any such wetland shall vary according to the natural slope of the land between the wetland and the location of the system in accordance with the following table (effective 3-13-1979):

0-8% slope = 100 foot setback
9-15% slope = 150 foot setback
over 15% slope = 200 foot setback.

Both Boulders and the town agree that the purpose of Section 1.4.1(F) is to protect wetlands. The conventional design did not require any variance from this ordinance, but because the property contains wetlands, the conservation/open space proposal required a variance for roughly twenty-five of the sixty-six subdivided lots. After a public hearing, the board expressed its preference for the conservation/open space proposal and encouraged Boulders to seek the necessary variance.

Boulders then applied for a variance, asking that it be allowed to install some septic systems within seventy-five feet of the wetlands. The zoning board of adjustment denied the request, as well as Boulders' petition for rehearing. Rather than appeal the denial of the variance, Boulders petitioned the superior court to declare Section 1.4.1(F) unconstitutional both on its face and as applied to the property.

During a bench trial, the superior court heard testimony from five expert witnesses: Rick Van de Poll, a Ph.D. in natural resources management; William E. Evans, an employee of the New Hampshire Department of Environmental Services (DES) involved in the DES rulemaking process; Corey Colwell, owner of a landscape and engineering firm and the person who prepared the subdivision plans for the property; Lawrence Morse of New Hampshire Soil Consultants, Inc.; and Jim Gove of Gove Environmental Services. Evans, Colwell, Morse and Gove all testified as experts on behalf of Boulders, while Van de Poll was the town's only expert. Each witness testified about how septic systems work, what happens when they fail, and the impact they may have on various types of wetlands. They also testified about the kinds of factors that should be considered in designing septic systems and wetlands ordinances, and gave opinions on the propriety of Section 1.4.1(F) and its use of slope as the sole factor in determining septic system setbacks from wetlands within the town.

After hearing testimony from the witnesses and accepting memoranda of law from the parties, the trial court ruled in favor of Boulders. This appeal followed.

On appeal, the town argues that the trial court applied the wrong standard in examining the constitutionality of Section 1.4.1(F). It argues in the alternative that, if the correct standard was applied, there was insufficient evidence for Boulders to meet its burden and for the court to invalidate the ordinance. We discuss each argument in turn.

It is unclear from the record before us whether, at trial, Boulders made an equal protection or substantive due process challenge, or both. On appeal it argues only that the ordinance violates substantive due process under Part I, Articles 2 and 12 of the State Constitution. We therefore limit our discussion to the substantive due process protections of the State Constitution and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 232-33 (1983).

## II

■ We first address whether the trial court applied the wrong standard in reviewing the constitutionality of the ordinance. The State zoning-enabling act grants municipalities broad authority to pass zoning ordinances for the health, safety, morals and general welfare of the community. *Taylor v. Town of Plaistow*, 152 N.H. 142, 145 (2005); RSA 674:16, I (1996). In determining whether an ordinance is a proper exercise of the town's police power, and thus able to withstand a substantive due process challenge under the State Constitution, we apply the rational basis test. *Dow v. Town of Effingham*, 148 N.H. 121, 124 (2002). This inquiry employs the lowest level of constitutional scrutiny, and asks whether the ordinance constitutes a restriction on property rights that is rationally related to the municipality's legitimate goals. *Taylor*, 152 N.H. at 145.

Both the town and Boulders agree that this is the proper test for a substantive due process claim under the State Constitution. The town, however, argues that the trial court did not apply the rational basis test in reaching its conclusion that the ordinance was unconstitutional. Rather, it argues that the trial court applied the middle-tier test, or intermediate scrutiny standard that we have recognized as appropriate for equal protection challenges to zoning ordinances under the State Constitution. *See Dow*, 148 N.H. at 124-25; *Town of Chesterfield v. Brooks*, 126 N.H. 64, 67-69 (1985).

It is unclear which test the trial court applied in reaching its determination. After describing the expert witnesses' testimony, the court turned to the question of whether the ordinance was constitutional on its face. However, it immediately quoted the *Metzger* rule for resolving as-applied challenges to zoning ordinances—namely a "balancing of the injury or loss to the landowner against the gain to the public." *Metzger v. Town of Brentwood*, 117 N.H. 497, 501 (1977). It then quoted *Brooks* for the proposition that "[z]oning ordinances consider and balance the interests of *all* landowners, and for this reason are subject to our middle tier equal protection test and not the strict scrutiny standard." *Brooks*, 126 N.H. at 68. The trial court then followed with an exposition of the intermediate scrutiny test, that the ordinance "'must be reasonable, not

arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" *Id.* at 69 (quoting *Carson v. Maurer*, 120 N.H. 925, 932 (1980)). Finally, the trial court cited the rational basis test for substantive due process claims; namely, "'whether the claimants proved that the provision constitutes a restriction on property rights that is not rationally related to the town's legitimate goals.'" *Casperson v. Town of Lyme*, 139 N.H. 637, 642 (1995) (quoting *Asselin v. Town of Conway*, 137 N.H. 368, 372 (1993)).

After setting forth these various standards of review, the trial court applied them to the expert testimony introduced at trial. It began by stating that, "to be legitimate, the ordinance must be rationally related to the protection of the wetlands." While we agree that rational basis review is the proper standard in this case, we note that a rational relation to the town's objective does not make the objective legitimate. Rather, the goal must itself be legitimate, and additionally the means employed by the town must be rationally related to that end. *Taylor*, 152 N.H. at 145. Assuming, however, that the trial court properly began this portion of its order with rational basis review, it ended its facial analysis by holding that the ordinance was not rationally related, was arbitrary and unreasonable, and did not bear a fair and substantial relationship to the protection of wetlands. It thus ruled that the ordinance was invalid on its face.

As part of its analysis, the court also determined that "all of the experts agreed that a less restrictive setback of 75 feet would protect the wetlands in all circumstances." It relied upon this finding in ruling that, "by setting the setback requirements at a distance more severe than any of the experts testified was necessary," the town's ordinance was arbitrary and unreasonable.

The town argues that there is insufficient evidence to support the finding that *all* experts testified that seventy-five feet is sufficient. It also argues that the town may impose greater restrictions than does the State. *See* RSA 485-A:32, I (2001); *Cherry v. Town of Hampton Falls*, 150 N.H. 720, 725 (2004). Therefore, because DES rules apparently set minimum setback distances of fifty or seventy-five feet depending on the type of soil, the town contends that the court erred in invalidating the 100-, 150- and 200-foot setback requirements in the ordinance. *See* N.H. ADMIN. RULES, Env-Ws 1014.01(a); STRAFFORD ZONING ORD. 1.4.1(F).

■ While we agree that the town may enact greater protections for wetlands, we do not read the trial court's order as stating that the town's requirements equal the State's minimum distances. Nor do we believe, as the town suggests, that "the court may also have been persuaded by the setbacks imposed between wetlands and septic systems in other towns."

Rather, we read the court's order as invalidating the ordinance because the setback requirements could have been more narrowly tailored. In doing so, the trial court inappropriately applied an element of our highest level of constitutional inquiry, strict scrutiny. *See Seabrook Police Assoc. v. Town of Seabrook*, 138 N.H. 177, 179 (1993) (strict scrutiny under State Constitution requires that legislation not be unduly restrictive or unreasonable, and is thus similar to narrowly-tailored requirement of strict scrutiny under Federal Constitution). "An analysis of least restrictive alternatives is not part of a rational basis analysis. We will not second-guess the town's choice of means to accomplish its legitimate goals, so long as the means chosen is rationally related to those goals." *Casperson*, 139 N.H. at 644 (citation omitted). Thus, while it may be that there is no rational relationship between these greater setbacks and the protection of wetlands, we will not invalidate Section 1.4.1(F) merely because there are less restrictive means of accomplishing the same end.

Finally, the trial court addressed the as-applied challenge. It again quoted the balancing test from *Metzger*, but then determined that, "because the [trial] court [had] already determined that the ordinance is facially invalid, it need not explore whether it is unconstitutional as applied to the plaintiff's property." The court therefore granted Boulders' petition for declaratory judgment.

The parties also made errors that likely contributed to the trial court's confusion. For example, in its memorandum of law, Boulders argued "that the ordinance is unduly restrictive . . . and that it is overbroad, capturing far too much property within its setback restriction than is necessary to achieve the town's reasonable health, safety and welfare goals." Counsel for Boulders also made reference to the least-restrictive-means standard during his opening statement at the hearing on the merits.

> It's the plaintiff's contention that the ordinance is facially invalid because it doesn't take into account the characteristics of either soils or the characteristics of wetlands, which if known . . . allow to make *a more accurate determination* of what could be an *appropriate setback*.

(Emphases added.) Additionally, counsel asked questions of the witnesses in an attempt to determine what the "proper" setback should be. The problem with this line of questioning, however, is that the ordinances are not required to produce a "proper" or "appropriate" setback, but rather one that is rationally related to the ends of protecting the wetlands. Indeed, these very questions led Van de Poll to state only that the "slope-based setback needs . . . further information to be *more correct* for the

particular site," and not that the ordinance was not rationally related to the protection of the wetlands. (Emphasis added.)

Finally, and as noted above, we cannot find any indication in the record that Boulders challenged the ordinance solely on substantive due process grounds below. Thus, the only suggestion that it was not making an equal protection argument is that Boulders consistently referred to the rational basis test, a test not normally triggered by an equal protection challenge to a zoning ordinance. But even then, the cases cited in Boulders' memorandum of law below—*Dow* and *Quirk v. Town of New Boston*, 140 N.H. 124 (1995)—make reference to or apply both the substantive due process and equal protection standards, thus leaving it uncertain as to what type of claim Boulders had raised. It was only on appeal that Boulders made clear that the claim arose under the substantive due process protections of the State Constitution.

The town also added to the confusion. In his opening statement, the town's counsel told the court:

> My understanding, however, is that the law, for the facial challenge, the law requires that [Boulders] sustain what's a heavy burden of proof, and that is to show that there is *no substantial relationship* between the ordinance and health safety morals or general welfare of the community.

(Emphasis added.) This recitation of the middle-tier scrutiny standard was repeated twice in the town's trial memorandum. The town relied on *Buskey v. Town of Hanover*, 133 N.H. 318, 322-23 (1990), to set forth our "fair and substantial" intermediate scrutiny test rather than the rational basis test.

Boulders argues that the town has waived its claim that the trial court applied the wrong standard, as the town itself urged the application of the erroneous standard. This argument, however, fails for two reasons: (1) Boulders itself failed to inform either the town or the trial court as to the precise claim it had made; and (2) Boulders conceded in its appellate brief that it, in fact, challenged the ordinance based solely on substantive due process and not equal protection grounds.

Our rational basis test requires that legislation be rationally related to a legitimate governmental interest. *See Taylor*, 152 N.H. at 145. In applying this test to zoning ordinances we have also stated that we will review the "reasonableness of a particular . . . provision" and that "its reasonableness will be presumed." *Id.*; *see also Quirk*, 140 N.H. at 130. At other times we have stated that a zoning ordinance must "bear[] a reasonable relationship to its objective," and that the police power, while wide ranging, will fail the rational basis test if it creates "unreasonable restrictions which deprive

[citizens] of the reasonable use of their land." *Dow*, 148 N.H. at 124 (quotation omitted); *Powers v. Town of Hampton*, 125 N.H. 273, 276 (1984); *Metzger*, 117 N.H. at 502. In another context we have stated, "Under the rational basis analysis, the party challenging [specific] legislation has the burden to prove that whatever classification is promulgated is arbitrary or without some reasonable justification." *LeClair v. LeClair*, 137 N.H. 213, 223 (1993) (quotation omitted) (applying rational basis review to RSA chapter 458).

Additionally, we have invalidated legislation under the rational basis test for being broader than necessary to accomplish a town's legitimate goals. In *Metzger* and *Powers* we declared two zoning ordinances unconstitutional for requiring more frontage and a larger fire lane than was necessary to achieve the town's goals. *Metzger*, 117 N.H. at 503 (requiring 200 feet of frontage was unconstitutional where 123 feet provided ready access); *Powers*, 125 N.H. at 276 (requiring twenty-four-foot-wide fire lane was unconstitutional where fifteen feet sufficient). In doing so we applied the rational basis test to require that legislation must "not unduly restrict fundamental rights," *id.*, and asked whether the restrictions were "unnecessary to accomplish a legitimate public purpose," *Metzger*, 117 N.H. at 503. Such holdings appear to apply a least-restrictive-means test that is not part of rational basis review. *See Casperson*, 139 N.H. at 644.

As this discussion indicates, there is an overlap between our rational basis and strict scrutiny standards. We have also recognized an overlap between our rational basis and middle-tier or intermediate scrutiny tests. *Gonya v. Comm'r, N.H. Ins. Dep't*, 153 N.H. 521, 534 (2006); *id.* at 538 (Broderick, C.J., concurring specially). Each of these three tests employs the terms "reasonable," "arbitrary," and "unduly restrictive." Intermediate scrutiny requires that challenged legislation be reasonable, not arbitrary, and have a fair and substantial relation to the governmental objective. *Carson v. Maurer*, 120 N.H. at 932-33. Strict scrutiny requires that legislation be necessary to achieve a compelling governmental interest, reasonably related to its objective, and not unduly restrictive. *Seabrook*, 138 N.H. at 179. Intermediate and strict scrutiny also contain some type of least-restrictive-means inquiry, although the level of "fit" between the legislation's means and ends differs under each test. *Id.* ("requirement that regulations be neither unduly restrictive nor unreasonable [under State strict scrutiny test] is similar to the federal 'narrowly tailored requirement'"); *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 126 (1990) (Souter, J., dissenting) (discussing over- and underinclusive nature of statute to determine whether it was

"fairly and substantially related" to objective under intermediate scrutiny).

Allowing the continued and duplicative use of the terms "reasonable," "arbitrary," and "unduly restrictive" in each of our levels of constitutional review, as well as the use of a least-restrictive-means inquiry in our rational basis review, would perpetuate and foster the kind of confusion demonstrated in the case before us. "The doctrine of *stare decisis* is a brake upon legal change to be applied in the interest of continuity." *Amoskeag Co. v. Dartmouth College*, 89 N.H. 471, 474 (1938) (superseded by statute on other grounds). However, given the status of our standards of constitutional review, in our judgment it is better to undergo the hardships that may result from correcting these tests and bringing them into conformity with each other than to suffer the errors to persist. *See id.*

█ We therefore hold that the rational basis test under the State Constitution requires that legislation be only rationally related to a legitimate governmental interest. We further hold that the rational basis test under the State Constitution contains no inquiry into whether legislation unduly restricts individual rights, and that a least-restrictive-means analysis is not part of this test. Accordingly, we overrule *Metzger v. Town of Brentwood*, 117 N.H. 497 (1977), and *Powers v. Town of Hampton*, 125 N.H. 273 (1984), to the extent that they do not comply with these standards. We have been careful today not to mislabel these standards, and trust that the bench and bar will do likewise.

We recognize that our holding here affects the other standards of constitutional review, but we will not at this time make any changes to our intermediate and strict scrutiny tests. In *Gonya*, it was noted that there are various other problems inherent in our intermediate scrutiny test. *Gonya*, 153 N.H. at 536-39 (Broderick, C.J., concurring specially). However, because neither the parties nor the trial court in that case had raised such issues, we did not address those concerns. Nor will we do so here, as only the rational basis test is before us. As we did in that case, we encourage future litigants to consider these issues in order to aid our continued examination of these standards of constitutional review.

### III

The town argues that we should, having determined that it is unclear which test the trial court applied, remand this case for a new hearing. We agree. The town further contends that this case should be decided on the as-applied grounds first, without addressing the facial validity of the ordinance. As Boulders has expressly made a facial challenge to Section 1.4.1(F), we believe that this issue must be addressed before the trial court

examines whether Section 1.4.1.(F) can be applied to a particular piece of property.

The party challenging legislation as violating the rational basis test has the burden of proof. *LeClair*, 137 N.H. at 223. Like the United States Supreme Court, we will generally invalidate legislation *in toto* only where it has no constitutional applications. *See State v. Pike*, 128 N.H. 447, 451 (1986) (overbreadth doctrine applicable primarily in First Amendment cases); *United States v. Salerno*, 481 U.S. 739, 745 (1987) (to succeed in facial challenge, plaintiff "must establish that no set of circumstances exists under which the [legislation] would be valid ... [because United States Supreme Court has] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment"). Thus, legislation may not be applied in a *particular* case if it is facially invalid and could not constitutionally be applied in *any* case. *See id.* Therefore, Boulders must prove that the ordinance is not rationally related to its intended purpose of protecting the wetlands.

We note that there are many reasons besides scientific data that a town could posit to justify its zoning ordinances. *See, e.g., Taylor*, 152 N.H. at 145 (aesthetics, safety and planning concerns constitute legitimate uses of police power); *Quirk*, 140 N.H. at 130 ("buffer [zone around campground] was necessary to avoid unsightliness, contain noise, and" for safety concerns); *Asselin*, 137 N.H. at 371-72 ("We now conclude that municipalities may validly exercise zoning power *solely* to advance aesthetic values, because the preservation or enhancement of the visual environment may promote the general welfare."); RSA 674:16, I (1996) ("zoning ordinance shall be designed to regulate and restrict ... [l]ot sizes, the percentage of a lot that may be occupied, and the size of yards, courts and other open spaces ... [and] location and use of buildings, structures and land used for business, industrial, residential, or other purposes"). Indeed, we have recognized in another context that scientific and statistical data are "but one kind of evidence" and "cannot function as the sole guide" in examining zoning ordinances, *Rancourt v. Town of Barnstead*, 129 N.H. 45, 51 (1986), and have further stated that "any fair reason [that] could be assigned for bringing legislation within [the town's] purview" might be sufficient to save it, *Sundeen v. Rogers*, 83 N.H. 253, 257 (1928).

Having articulated this new standard, we vacate the trial court's ruling and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.