Merrimack
No. 2005-794

RALPH L. AKINS *& a.*

v.

SECRETARY OF STATE

Argued: July 21, 2006
Opinion Issued: August 17, 2006

*Twomey Law Office*, of Epsom (*Paul Twomey* on the brief and orally), for the petitioners.

*Kelly A. Ayotte*, attorney general (*Wynn E. Arnold*, senior assistant attorney general, on the brief and orally), for the respondent.

GALWAY, J. The petitioners, who are the New Hampshire Democratic party and individuals who ran as Democratic, Republican, or Libertarian candidates in the 2004 New Hampshire general election, appeal an order of the Superior Court (*McGuire*, J.) denying their petition for declaratory judgment that the organization of parties and candidates on New Hampshire general election ballots is unconstitutional. We reverse and remand.

The record supports the following facts. The petitioners alleged that they were disadvantaged in the 2004 New Hampshire general election by the provisions of RSA 656:5 and requested that the trial court mandate a

method of randomly selecting both party order and candidate order on the ballot. At that time, RSA 656:5 provided for an "office block" format ballot, in which all of the candidates for an office were grouped within a box. RSA 656:5, II required that the candidates of the party that had received the highest total votes for all offices combined in the preceding election would be listed first within each office box. RSA 656:5, II further organized the ballot by providing that the candidates would be arranged alphabetically by surname within each party. The language of RSA 656:5 in effect in 2004 read as follows:

### Listing Candidates on Ballot.

I. The names of all candidates nominated in accordance with the election laws shall be arranged by office in accordance with the provisions of RSA 656:7. The names of candidates for any one office shall not be split into more than one column.

II. All candidates for the same office shall be placed on separate lines within a separate box. The name of each candidate shall be grouped according to the party which nominates the candidate, and the names of the candidates of the party which received the largest number of votes at the last preceding state general election shall be listed first. The names of the candidates shall be printed with the given name first, and the candidates shall be listed alphabetically according to their surnames within each party grouping. The name of the party which nominates the candidate shall be printed near the candidate's name.

RSA 656:5 (Supp. 2004) (amended 2004).

In 2004, the legislature amended RSA 656:5. The current version establishes a "party column" format ballot, which groups candidates by party, listing all of one party's candidates for all offices in one column. RSA 656:5 (Supp. 2005). The current statute requires that the first column on the ballot represent the party that received the most total votes in the preceding general election. *Id.* Thus, the current statute shares the former statute's requirement that the first candidate listed for any given office on the ballot is the candidate from the party that received the most total votes in the preceding general election. *Id.* The current statute no longer requires that candidates be listed in alphabetical order; however, the Secretary of State testified at trial in this case that the 2006 ballots will also list by alphabetical order within each column the candidates from the same party running for the same office. *Id.* The current statute reads, in pertinent part, as follows:

**Party Columns.** The names of all candidates nominated in accordance with the election laws shall be arranged upon the state general election ballot in successive party columns. Each separate column shall contain the names of the candidates of one party; except that, if only a part of a full list of candidates is nominated by a political party, 2 or more such lists may be arranged whenever practicable in the same column. The first column shall contain the names of the candidates of the party which received the largest number of votes at the last preceding state general election. *Id.*

At trial, the petitioners argued that the candidates of the party positioned first on the ballot have an advantage over candidates from other parties. The petitioners also argued that candidates appearing at the top of an alphabetical list have an advantage over candidates appearing at the bottom of an alphabetical list. The petitioners presented expert testimony that, when choices are presented visually, such as on a survey or ballot, the tendency of respondents who have no meaningful information, or have conflicting information, about their choices is to select the choice listed first. This is known as the "primacy effect." The expert testified that, in elections, voters' education levels and knowledge about the candidates affects the primacy effect, with the more educated and knowledgeable voters being less influenced by the primacy effect, and vice versa. In addition, difficulty of choice also affects the primacy effect, with voters tending to select choices listed first when presented with ballots containing many candidates, parties, or issues. The expert also testified regarding the primacy effect in New Hampshire elections, concluding that some New Hampshire voters, like voters in other states, will be influenced to choose the first candidate or party listed for an office because of the candidate's or party's position on the ballot. The State presented expert testimony that contradicted the petitioners' expert testimony.

Secretary of State William Gardner testified at trial that the last time any party other than the Republican Party was listed first on a New Hampshire general election ballot was 1966, after the Democratic party gained the majority of votes in the 1964 general election. Secretary Gardner also testified regarding prior testimony that he gave before the senate public affairs committee regarding the primacy effect. Gardner affirmed at trial that he had told the committee that studies showed that the primacy effect can confer as much as a six to ten percent advantage upon candidates whose names appear on lists as long as twelve candidates.

The trial court found that the petitioners' expert was more credible than the State's. Based upon testimony from the petitioners' expert and the

Secretary of State, the trial court found that the primacy effect influences elections both nationwide and in New Hampshire, stating that "primacy effects influence, to some small degree, the outcome of New Hampshire elections." The State does not appeal this finding.

After making its factual findings, the trial court addressed the petitioners' constitutional arguments. The trial court first addressed the petitioners' argument that the party order established by RSA 656:5 and the candidate order practiced by the Secretary of State violate the voting rights established in Part I, Article 11 of the New Hampshire Constitution, which provides, in pertinent part: "Every inhabitant of the state, having the proper qualifications, has an equal right to be elected into office." N.H. CONST. pt. I, art. 11. The trial court applied a rational basis level of scrutiny and found that the organization of the ballot was a permissible regulation of voting. The trial court next addressed the petitioners' argument that RSA 656:5 violates the New Hampshire Constitution's equal protection guarantees under Part I, Articles 1, 2, 10, 12, and 14. The trial court also applied a rational basis test to the equal protection argument, concluding that distinguishing between political parties on the basis of success in prior elections and the organization of candidates based upon alphabetization served the legitimate governmental interest of ordering a ballot.

The petitioners appeal, arguing that rational basis was an incorrect level of scrutiny to apply. Strict scrutiny should apply in this case, the petitioners argue, because the equal right to be elected is a fundamental right. The arrangement of parties and candidates established by RSA 656:5 and practiced by the Secretary of State impinges upon this fundamental right because the arrangement unequally grants the benefits of the primacy effect to the majority party and candidates whose surnames begin with the first letters of the alphabet.

The State responds that the trial court properly used rational basis review because the positioning of parties on a ballot according to their vote counts in the prior election does not implicate a suspect class or a fundamental right and falls within the State's right to reasonably regulate elections. RSA 656:5 rationally establishes a logical and easily understood ballot, which, the State argues, is sufficient to survive rational basis review.

It is the role of this court to interpret the State Constitution and to resolve disputes arising under it. *Petition of Below*, 151 N.H. 135, 139 (2004). Whether or not a statute is constitutional is a question of law, which we review *de novo. Gonya v. Comm'r, N.H. Ins. Dep't.*, 153 N.H. 521, 524 (2006). "In reviewing a statute, we presume it to be constitutional and we will not declare it invalid except upon inescapable grounds." *Id.* Because

the petitioners argue only under the State Constitution, we base our decision upon it alone, citing federal cases for guidance only. *Id.*

The State does not appeal the trial court's finding, which is supported by the evidence adduced at trial, that the primacy effect confers an advantage in elections. Accordingly, we accept this finding. We note that other appellate courts have accepted findings that the first position on a ballot confers an advantage. *Tsongas v. Secretary of the Commonwealth*, 291 N.E.2d 149, 15152 (Mass. 1972); *Gould v. Grubb*, 536 P.2d 1337, 1341 (Cal. 1975) (en banc).

■ We first address the petitioners' argument that rational basis was an incorrect level of scrutiny to apply to their claim that RSA 656:5 violates Part I, Article 11 of the New Hampshire Constitution because the equal right to be elected is a fundamental right. The petitioners are correct that, generally, when governmental action impinges upon a fundamental right, such matters are entitled to review under strict judicial scrutiny. *Claremont School Dist. v. Governor*, 142 N.H. 462, 472 (1997). Although the right to vote is fundamental, *see McGraw v. Exeter Region Coop. Sch. Dist.*, 145 N.H. 709, 713 (2001), we have never expressly determined the classification of the equal right to be elected. We have previously stated, however, that the right to vote and the equal right to be elected are "closely connected." *Opinion of the Justices*, 83 N.H. 589, 592-93 (1927) (overruled on other grounds). Both of these rights have been linked in our constitution in Part I, Article 11 since 1784. *See* N.H. CONST. pt. I, art. 11; *see also Wilkes v. Jackson*, 101 N.H. 420, 422 (1958). Other courts have recognized the close connection between the rights of candidates and the right to vote. *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (stating, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters" (quotation omitted)); *Gould*, 536 P.2d at 1338-39 (concluding, "any procedure which allocates [an] advantageous position[] to a particular class of candidates inevitably discriminates against voters supporting all other candidates"). Because the equal right to be elected operates so closely with the fundamental right to vote, and because of the importance that both rights have in our democratic system of government, and because Part I, Article 11 expressly so provides for the equal right to be elected, we conclude that every New Hampshire inhabitant's equal right to be elected into office under Part I, Article 11 is a fundamental right.

■ Simply because the equal right to be elected under Part I, Article 11 is fundamental does not mean that any impingement upon that right triggers strict scrutiny, however. Article I, Section 4, Clause 1 of the

Federal Constitution grants states the right to regulate the time, place, and manner of state and federal elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *see also Kibbe v. Town of Milton*, 142 N.H. 288, 293-94 (1997). Thus, we must balance the legislature's right to regulate elections with citizens' rights to vote and be elected. The United States Supreme Court has struck a balance between similar rights in the following manner:

> [T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to assure that elections are operated equitably and efficiently.
>
> . . . .
>
> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights ... that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Burdick*, 504 U.S. at 433-34 (quotations omitted). Under this analytical framework, when the election law at issue subjects the plaintiff's rights to "severe" restrictions, the regulation must withstand strict scrutiny to be constitutional. *Id.* at 434. When the election law imposes only "reasonable, nondiscriminatory restrictions" upon the plaintiff's rights, then "the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (quotations omitted). We conclude that this analysis properly considers the rights of voters and candidates under Part I, Article 11 of the New Hampshire Constitution as well as the legislature's right to regulate elections.

Applying the above framework to the instant case, the task before us is to consider whether RSA 656:5 and the Secretary of State's practice of alphabetizing candidates subject the petitioners' equal right to be elected to severe restrictions or whether the statute and the alphabetization impose only "reasonable, nondiscriminatory restrictions." The Secretary of State's testimony that the primacy effect can confer an advantage as great as six to ten percent in races where there are numerous candidates demonstrates the potency of the primacy effect. The trial court's finding that the primacy effect influences, even to a small degree, the outcome of New Hampshire elections confirms that the impact of the primacy effect may be sufficiently strong to affect one candidate's victory over another. By establishing a system that grants the primacy effect to the party that

received the most votes in the prior election, RSA 656:5 denies candidates of minority parties an equal opportunity to enjoy the advantages of the primacy effect, and, thus, an equal right to be elected. The ordering of candidates in alphabetical order, either by statutory mandate or by practice, similarly deprives candidates whose surnames do not begin with letters near the beginning of the alphabet the equal right to be elected. Although the trial court found that the primacy effect's influence on the outcome of elections is small, it is well known that elections are often decided by narrow margins, and even a small degree of influence carries the potential to change the result of an election. Thus, the persistent assignment of the primacy effect's benefits to some groups of candidates and not to others places a severe restriction on the constitutionally enumerated equal right to be elected. The ordering of parties on a ballot based upon votes in the prior election and the alphabetization of candidates are not "reasonable, nondiscriminatory restrictions," because these restrictions discriminate against candidates running in minority parties and against candidates whose surnames do not begin with letters located near the beginning of the alphabet. Accordingly, the relevant provision of RSA 656:5 and the Secretary of State's practice of alphabetizing candidates must comply with strict scrutiny to be constitutional.

To comply with strict judicial scrutiny, the governmental restriction must "be justified by a compelling governmental interest and must be necessary to the accomplishment of its legitimate purpose." *Follansbee v. Plymouth Dist. Ct.*, 151 N.H. 365, 367 (2004). The State argues that its interest is to promote a logical and easily understood ballot by arranging it so that the party receiving the most votes in the previous election receives first place on the ballot and so that candidates of the same party running for multi-seat offices are arranged in alphabetical order by surname. Although the State has a compelling interest in creating a manageable ballot, *see Storer v. Brown*, 415 U.S. 724, 743 (1974); *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989) (declaring that states have a compelling interest in preserving the integrity of the election process), the State has failed to demonstrate that arranging the ballot as required by RSA 656:5 and the practice of alphabetization are necessary to create a manageable ballot. Other states have created manageable ballots using other methods of organization, such as rotating the names of the candidates for a particular office, *e.g.* Alaska Stat. § 15.15.030(6) (Supp. 2005); Ohio Rev. Code Ann. § 3505.03 (West 2005), or randomly selecting the order of candidates for a particular office. *E.g.* Cal. Elec. Code § 13112 (Deering Supp. 2006); 10 Ill. Comp. Stat. 5/7-60 (West Supp. 2006). Additionally, the legislature has already shown that it is able to create a

manageable ballot using a different method of organization that minimizes the primacy effect. RSA 656:24 (Supp. 2005) dictates that, in primary elections, candidates running for the same office shall be alternated on the ballot "so that each name shall appear thereon as nearly as may be an equal number of times at the top, at the bottom, and in each intermediate place."

 Because neither the provision of RSA 656:5 requiring that the party receiving the most votes in the prior election enjoy first place on the ballot nor the Secretary of State's practice of alphabetizing candidates is necessary to achieve a manageable ballot, we hold that neither restriction survives strict scrutiny, and that both are thus unconstitutional under Part I, Article 11 of the New Hampshire Constitution. Although New Hampshire's constitutionally guaranteed equal right to be elected is one not shared by most states, we note that other states have found unconstitutional statutes and election procedures that provided for unequal or biased distribution of the primacy effect. *See Gould*, 536 P.2d at 1345-47 (concluding that a city charter provision providing priority ballot listing to incumbents and advantageous ballot position based upon alphabetization of candidates failed strict scrutiny and violated the equal protection clauses of the Federal and California Constitutions); *Kautenburger v. Jackson*, 333 P.2d 293, 295 (Ariz. 1958) (declaring unconstitutional an Arizona statute that provided for alphabetical listing of candidates on primary election ballots that would be tallied by voting machines).

Due to our holding under Part I, Article 11, we need not address the petitioners' equal protection argument.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN, and HICKS, JJ., concurred.