Request of the House
No. 2015-171

OPINION OF THE JUSTICES
(Domicile for Voting Purposes)

Submitted: March 30, 2015
Opinion Issued: April 9, 2015

On March 18, 2015, the clerk of the New Hampshire House of Representatives (House) notified the chief justice and the associate justices of the supreme court that, on March 11, 2015, the House had adopted a request for an opinion of the justices regarding House Bill (HB) 112, an act relative to domicile for voting purposes. The House has requested that the justices give their opinion upon the following questions of law:

"1) Does HB 112 violate Part I, Article 11 of the New Hampshire State Constitution?

2) Does HB 112 violate any other provisions of the United States or the New Hampshire Constitution?"

*To the Honorable House*:

The following response is respectfully returned:

HB 112 proposes to amend RSA 654:1 (Supp. 2014) by inserting a new paragraph, which would provide: "A person who declares an address in a New Hampshire town or ward as his or her domicile for voting purposes shall be deemed to have established his or her residence for motor vehicle law purposes at that address."

You have asked that the undersigned justices of the supreme court render an advisory opinion as to HB 112's constitutional validity. *See* N.H. CONST. pt. II, art. 74. Part II, Article 74 requires justices of the supreme court to render advisory opinions "upon important questions of law and upon solemn occasions" when asked to do so by the legislature or the Governor and Council. *Opinion of the Justices (Appointment of Chief Justice)*, 150 N.H. 355, 356 (2003) (quotation omitted); *see* N.H. CONST. pt. II, art. 74.

■ You have posed two questions about the validity of HB 112. Your first question asks whether HB 112 would violate Part I, Article 11 of the New Hampshire Constitution. Your second question asks whether HB 112 violates any other provision of the United States or the New Hampshire Constitutions. Historically, we have declined to answer general inquiries on constitutional infirmity and, in keeping with that practice, we respectfully decline to answer the second question. *See Opinion of the Justices (Requiring Att'y Gen. to Join Lawsuit)*, 162 N.H. 160, 164 (2011).

With regard to your first question, for the reasons that follow, "after carefully considering our constitutional duties and based upon long-established prior decisions," we respectfully ask to be excused from answering your first question at this time. *Opinion of the Justices (Appointment of Chief Justice)*, 150 N.H. at 357.

■ Part II, Article 74 of the State Constitution "empowers the justices of the supreme court to render advisory opinions, outside the context of concrete, fully-developed factual situations and without the benefit of adversary legal presentations, only in carefully circumscribed situations." *Duncan v. State*, 166 N.H. 630, 640 (2014) (quotation omitted). "Part II, Article 74 does not authorize this court to render advisory opinions to private individuals." *Id.* "Nor does it empower the court to issue advisory opinions . . . regarding existing legislation." *Id.* at 640-41 (quotation omitted). "That authority extends only to proposed legislation." *Id.* at 641. Further, when we issue such opinions, "we act not as a court, but as individual constitutional advisors to the legislative or executive branches." *Opinion of the Justices (Appointment of Chief Justice)*, 150 N.H. at 356. Because an opinion of the justices is an advisory opinion issued to a branch of the legislature, Governor, or Executive Council, and is not an opinion of the court in a litigated case, an opinion of the justices "does not constitute

binding precedent." *State v. Ploof*, 162 N.H. 609, 625 (2011). Moreover, the constitutional duty of the justices of the supreme court to give advisory opinions does not include answering legal questions that require resolving questions of fact. *Opinion of the Justices (School Financing)*, 142 N.H. 892, 897 (1998).

Your first question asks whether HB 112 violates Part I, Article 11 of the New Hampshire Constitution, which provides, in pertinent part: "All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election." The court has previously held that the equal right to vote, as set forth in Part I, Article 11, is fundamental. *Akins v. Sec'y of State*, 154 N.H. 67, 71 (2006).

Determining whether HB 112 unconstitutionally impinges upon a complaining party's equal right to vote requires weighing "the character and magnitude of the asserted injury to the rights that [a complaining party] seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the [complaining party's] rights." *Id.* at 72 (quotation and ellipsis omitted); *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

Under this analytical framework, "the rigorousness of our inquiry into the propriety of [an] . . . election law depends upon the extent to which a challenged regulation burdens" a complaining party's equal right to vote. *Burdick*, 504 U.S. at 434. When an election law imposes only "reasonable, nondiscriminatory restrictions" upon a complaining party's equal right to vote, then "the State's important regulatory interests are generally sufficient to justify" those restrictions. *Akins*, 154 N.H. at 72 (quotations omitted); *see Burdick*, 504 U.S. at 434. By contrast, when the election law at issue subjects a complaining party's equal right to vote to "severe" restrictions, the law must withstand strict scrutiny to be constitutional. *Akins*, 154 N.H. at 72 (quotation omitted); *see Burdick*, 504 U.S. at 434. To withstand strict scrutiny, the law must "be justified by a compelling governmental interest and must be necessary to the accomplishment of its legitimate purpose." *Akins*, 154 N.H. at 73 (quotation omitted). This analysis is inherently fact-specific. *See Cruz v. Melicio*, 204 F.3d 14, 22 (1st Cir. 2000).

Currently, there is pending before the court a litigated case, with a factual record developed over two years, that raises legal issues that are similar, if not identical, to those implicated by your first question. *See Annemarie Guare & a. v. State of New Hampshire*, No. 2014-0558 (N.H.

filed Aug. 27, 2014). The notice of appeal in *Guare* was filed on August 27, 2014, the case is fully briefed, and oral argument is scheduled to take place on April 22, 2015.

■ To answer your first question now would place us in the position of giving advice on issues without a developed factual record and in advance of a decision on a matter currently before the court that involves similar issues. *See Opinion of the Justices (Appointment of Chief Justice)*, 150 N.H. at 357. Moreover, as previously explained, an advisory opinion on your first question would not constitute a decision of the court, would not establish precedent, and, thus, would not be binding on the court when deciding *Guare. See Ploof*, 162 N.H. at 625.

For these reasons, we believe that "orderly procedure" requires that we respectfully ask to be excused from answering your first question at this time. *Opinion of the Justices*, 104 N.H. 342, 344 (1962). Once the *Guare* opinion is issued, the court will ask the House whether it wishes to proceed with this request. In the event that it wishes to do so, we will address the request at that time.

LINDA STEWART DALIANIS

GARY E. HICKS

CAROL ANN CONBOY

ROBERT J. LYNN

JAMES P. BASSETT

*Charles G. Douglas, III*, of Concord, filed a memorandum on behalf of the New Hampshire House of Representatives in support of negative answers to the questions presented.

*Shaheen & Gordon, P.A.*, of Concord (*William E. Christie* on the memorandum), and American Civil Liberties Union of New Hampshire, of Concord (*Gilles R. Bissonnette* on the memorandum), filed a memorandum on behalf of the *American Civil Liberties Union of New Hampshire*, the League of Women Voters of New Hampshire, and the Fair Elections Legal Network in support of affirmative answers to the questions presented.