NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2014-558


ANNEMARIE GUARE & a.

v.

STATE OF NEW HAMPSHIRE

Argued: April 22, 2015
Opinion Issued: May 15, 2015


Shaheen & Gordon, P.A., of Concord (William E. Christie and Benjamin T. Siracusa Hillman on the brief, and Mr. Christie orally), American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette on the brief), and Sisti Law Offices, of Portsmouth (Alan J. Cronheim on the brief), for the petitioners.


Joseph A. Foster, attorney general (Anne M. Edwards, associate attorney general, and Stephen G. LaBonte, assistant attorney general, on the brief, and Mr. LaBonte orally), for the State.


PER CURIAM. The State appeals an order of the Superior Court (Tucker, J.) denying the State's summary judgment motion and granting that of the

petitioners, Annemarie E. Guare, Cody Blesedell, Garret Healey, Joan Ashwell, and the League of Women Voters, on their petition for declaratory and injunctive relief. When this case was decided by the trial court, petitioners Guare, Blesedell, and Healey were students enrolled at the University of New Hampshire, and petitioner Ashwell was a volunteer with the New Hampshire League of Women Voters.

The order on appeal made permanent the preliminary injunction issued in 2012 by the Superior Court (Lewis, J.), pursuant to which the State was required to delete from the standard voter registration form the following language: "In declaring New Hampshire as my domicile, I am subject to the laws of the state of New Hampshire which apply to all residents, including laws requiring a driver to register a motor vehicle and apply for a New Hampshire[ ] driver's license within 60 days of becoming a resident." Laws 2012, 285:2. The trial court issued the permanent injunction after concluding that the challenged language violated Part I, Article 11 of the New Hampshire Constitution. On appeal, the State does not separately challenge the trial court's issuance of injunctive relief. Rather, the State confines its appellate arguments to the trial court's determination that the challenged language violates Part I, Article 11. We affirm.

I. Background

Language similar to the challenged language was first added to the standard voter registration form in 2003. See Laws 2003, 289:25. It was removed from the form in 2007. See Laws 2007, 10:1. The challenged language was added to the standard voter registration form in 2012. See Laws 2012, 285:2. The sole issue in this appeal is whether the challenged language required by Laws 2012, 285:2 violates Part I, Article 11 of the New Hampshire Constitution.

In September 2012, the petitioners filed the instant action, alleging that the challenged language is confusing because it conflates the statutory definitions of "domicile" and "residence," and, therefore, violates a citizen's constitutional right to vote. See RSA 654:1, I (Supp. 2014) (defining "domicile"); RSA 21:6 (2012) (defining "resident"); RSA 21:6-a (2012) (defining "residence"). Following several hearings, the superior court issued a preliminary injunction, which removed the language from the voter registration form pending final resolution of this case. In October 2012, the State filed with this court an emergency motion for a stay. We denied the State's motion on October 9, 2012.

The petitioners filed their summary judgment motion in the trial court in March 2014, and the State filed its objection and cross-motion in April 2014. In its summary judgment order, the trial court first determined that it had to apply our strict scrutiny standard of review to the challenged language. The

trial court reasoned that strict scrutiny was required because the right to vote is a fundamental right, see Akins v. Sec'y of State, 154 N.H. 67, 71 (2006), and because, in the trial court's view, the subject language severely burdened the right to vote by confusing potential registrants and causing otherwise qualified voters to forgo registering to vote. Although the State advanced three interests to justify the language, the trial court found that none was sufficiently weighty to justify the severe burden upon a citizen's fundamental right to vote. See id. Accordingly, the court concluded that the subject language violates Part I, Article 11 of the State Constitution.

On appeal, the State argues that the trial court erred by applying strict scrutiny to the subject language. The State contends that because the language is "consistent with New Hampshire law[ ] and is both reasonable and nondiscriminatory," it imposes no burden upon a citizen's fundamental right to vote. The State further contends that "[a]ny restrictions that the subject language places on [the] right to vote" are justified by the State's interest in complying with certain provisions of the federal Help America Vote Act (HAVA), see 52 U.S.C.A. § 21083 (Supp. 2014). Because the State has not briefed on appeal the other two interests it asserted in the trial court to justify the challenged language, we consider its arguments about those interests waived. See Aubert v. Aubert, 129 N.H. 422, 428 (1987) ("Arguments not briefed are waived on appeal.").

## II. Discussion

### A. Standard of Review

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 758 (2014). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id.

We review the trial court's application of the law to the facts de novo. Id. We also review de novo the trial court's determination that the language at issue violates Part I, Article 11 of the State Constitution. See Am. Fed'n of Teachers – N.H. v. State of N.H., 167 N.H. ___, ___, 111 A.3d 63, 68 (2015). Because it is part of a legislative act, we presume the language to be constitutional and will not declare it invalid except upon inescapable grounds. See id. Because the trial court's ruling was not based upon applying the challenged language to the particular facts and circumstances of this case, it amounts to a determination that the language is facially unconstitutional. See State v. Carter, 167 N.H. 161, 165 (2014). Thus, the petitioners, as challengers

of the language's constitutionality, "must establish that no set of circumstances exist under which it would be valid." Id. (quotation and brackets omitted).

> ### B. Relevant Constitutional and Statutory Provisions

Part I, Article 11 of the New Hampshire Constitution provides, in pertinent part:

> All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election. Every person shall be considered an inhabitant for the purposes of voting in the town, ward, or unincorporated place where he has his domicile.

Although the State Constitution does not define "domicile," the legislature has defined it as "that one place where a person, more than any other place, has established a physical presence and manifests an intent to maintain a single, continuous presence for domestic, social, and civil purposes relevant to participating in democratic self-government." RSA 654:1, I. Under RSA 654:1, I, a person's "mere intention to change domicile in the future does not, of itself, terminate an established domicile before the person actually moves." RSA 654:1, I-a (Supp. 2014) provides that a college student "may lawfully claim domicile for voting purposes in the New Hampshire town or city in which he or she lives while attending [college] . . . if such student's claim of domicile otherwise meets the requirements of RSA 654:1, I."

The legislature has defined "residence" differently from "domicile." "Residence" is "a person's place of abode or domicile," and the phrase "place of abode or domicile" is defined as "that [place] designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others." RSA 21:6-a. Pursuant to RSA 21:6, a "resident" is "a person who is domiciled or has a place of abode or both in this state . . . , and who has, through all of his actions, demonstrated a current intent to designate that place of abode as his principal place of physical presence for the indefinite future to the exclusion of all others." Our motor vehicle laws use this definition of "resident." See RSA 259:88 (2014). Upon becoming a "resident" of New Hampshire, one has 60 days in which to register one's vehicle here and to obtain a New Hampshire driver's license. See RSA 261:45 (2014); RSA 263:35 (2014). These requirements do not apply to citizens who are not "residents" of New Hampshire although they have their "domicile" here. The basic difference between a "resident" and a person who merely has a New Hampshire "domicile," is that a "resident" has manifested an intent to remain in New Hampshire for the indefinite future, while a person who merely has a New Hampshire "domicile" has not manifested that same intent.

4

For the purposes of this appeal, the State has agreed that the 2012 law that added the challenged language to the voter registration form, Laws 2012, 285:2, does not alter the statutory definitions of "domicile" and "residence." The State has also acknowledged that the statutory definition of "domicile" and the statutory definition of "residence" differ. Further, the State has agreed that, to vote in New Hampshire, a citizen need only have a New Hampshire "domicile," and need not be a New Hampshire "resident."

C.  Level of Scrutiny

Like the trial court, we begin by considering the level of scrutiny that applies to the challenged language. Although the right to vote is fundamental, we do not necessarily subject any impingement upon that right to strict scrutiny. See Akins, 154 N.H. at 72. Instead, we apply a balancing test to determine the level of scrutiny that we must apply. See id. Under that test, we "weigh the character and magnitude of the asserted injury to the [voting] rights" sought to be vindicated "against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick v. Takushi, 504 U.S. 428, 434 (1992) (quotations omitted); see Akins, 154 N.H. at 72 (adopting this analysis under the State Constitution). "Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens" the fundamental right to vote. Burdick, 504 U.S. at 434; see Akins, 154 N.H. at 72. When those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." Burdick, 504 U.S. at 434 (quotations omitted); see Akins, 154 N.H. at 72. But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the rights of voters, "the State's important regulatory interests are generally sufficient to justify the restrictions." Burdick, 504 U.S. at 434 (quotations omitted); see Akins, 154 N.H. at 72. "Most cases fall in between these two extremes." Obama for America v. Husted, 697 F.3d 423, 429 (6th Cir. 2012).

The petitioners argue that strict scrutiny is required because the challenged language imposes a severe burden upon the fundamental right to vote by conflating the statutory definitions of "domicile" and "residence" and potentially causing an otherwise qualified voter to be confused and to choose not to register to vote. The State counters that, because the challenged language is not misleading and does not misstate New Hampshire law, it imposes no burden upon the right to vote. According to the State, the language not only "is entirely consistent with New Hampshire law," but also "is both reasonable and nondiscriminatory." Thus, the State argues, a test similar to rational basis is the proper standard of review. See State v. Hollenbeck, 164 N.H. 154, 163 (2012) (describing rational basis test).

5

We agree with the petitioners that the challenged language inaccurately states New Hampshire law. The challenged language informs a potential voter that, upon declaring New Hampshire as her domicile, she is "subject to the laws of the state of New Hampshire which apply to all residents, including laws requiring a driver to register a motor vehicle and apply for a New Hampshire[ ] driver's license within 60 days of becoming a resident." Laws 2012, 285:2. This is inaccurate. A person who has only a New Hampshire domicile, but who does not meet the statutory definition of "resident," is <u>not</u> "subject to the laws of the state of New Hampshire which apply to all residents."

The State argues that, properly interpreted, the language merely informs a citizen that, upon declaring New Hampshire as her domicile, she is "subject to the laws of the state of New Hampshire." The State argues that this is a true statement – non-residents are subject to certain New Hampshire laws, such as traffic laws. However, this is not what the challenged language states. Rather, the language specifies that the laws of the State of New Hampshire to which a person who declares New Hampshire as her domicile is subject are those "which apply to all residents."

The State further argues that the language merely informs a citizen with a New Hampshire domicile that, if and when she becomes a resident in the future, within 60 days of doing so, she must register her motor vehicle here and apply for a New Hampshire driver's license. However, the language does not state that either. Instead, it informs a citizen with a New Hampshire domicile that, upon declaring New Hampshire as her domicile, she <u>is subject</u> to our laws that "apply to all residents," including our laws regarding obtaining a driver's license and registering a motor vehicle.

We also agree with the petitioners that the challenged language is confusing because it is susceptible of different interpretations. <u>Cf</u>. <u>Union Leader Corp. v. N.H. Retirement Sys.</u>, 162 N.H. 673, 677 (2011) (concluding that statute is ambiguous because there is more than one reasonable interpretation of it). For instance, although the State has argued in this appeal that the challenged language left intact the statutory definitions of "domicile" and "residence," the New Hampshire House of Representatives (House), in its emergency motion to intervene filed in the trial court, argued just the opposite. According to the House, the challenged language "expand[s] the [statutory] definition of residency" by including in that definition "persons who declare a domicile in New Hampshire and vote in a New Hampshire election." Similarly, after this litigation was commenced, a few legislators publicly opined that the challenged language requires a voter with a New Hampshire domicile, who is not a New Hampshire "resident," to obtain a New Hampshire driver's license and to register her vehicle here, before voting here.

Moreover, in this case, there is more than the "mere possibility of voter confusion." <u>Washington State Grange v. Washington State Republican Party</u>,

552 U.S. 442, 455 (2008) (concluding that court cannot invalidate statute on its face based upon "mere possibility of voter confusion"). Petitioners Guare, Blesedell, and Healey testified that they found the challenged language confusing because it uses the words "domicile" and "resident" interchangeably and is unclear as to whether a citizen with a New Hampshire "domicile," who is not a New Hampshire "resident," must obtain a New Hampshire driver's license and motor vehicle registration upon registering to vote. Blesedell and Healey also testified that they would feel uncomfortable registering to vote in New Hampshire because of the challenged language. However, it is undisputed that even though Guare, Blesedell, and Healey are not New Hampshire "residents," they are entitled to vote in New Hampshire because they are "domiciled" here.

Because the challenged language is confusing and inaccurate, and because, as the trial court found, it could cause an otherwise qualified voter not to register to vote in New Hampshire, we hold that, as a matter of law, the burden it imposes upon the fundamental right to vote is unreasonable. Accordingly, we decline the State's invitation to apply a test similar to our rational basis level of scrutiny. However, we similarly decline the petitioners' invitation to apply strict scrutiny because, even if we assume, without deciding, that the burden in this case is not severe, the challenged language fails under intermediate scrutiny, a test that is more deferential to the State than strict scrutiny.

Our intermediate level of scrutiny requires that a challenged law be substantially related to an important governmental objective. Cmty. Res. for Justice v. City of Manchester, 154 N.H. 748, 762 (2007) (discussing intermediate scrutiny test in equal protection context). Under this level of review, the State bears the burden of proof. See id. "To meet this burden, the government may not rely upon justifications that are hypothesized or invented post hoc in response to litigation, nor upon overbroad generalizations." Id. (quotations omitted).

We have not previously considered what level of scrutiny applies when a voting restriction falls between the two extremes ("severe" on the one hand and "reasonable" and "nondiscriminatory" on the other). Compare Akins, 154 N.H. at 72-73 (applying strict scrutiny because burden upon voting rights was severe), with Libertarian Party N.H. v. State, 154 N.H. 376, 386 (2006) (concluding that, because any additional burdens upon the plaintiffs were reasonable, the State's important regulatory interests were sufficient to justify those burdens). Courts in other jurisdictions have recognized that a test similar to intermediate scrutiny applies to a voting restriction that falls between the two extremes. See Gustafson v. Illinois State Bd. of Elections, No. 06 C 1159, 2007 WL 2892667, at *9 (N.D. Ill. 2007) (explaining that "[c]hoosing among the degrees of scrutiny – ranging from strict to intermediate to rational basis – comes down to the severity of the burden being imposed on the right to vote"); In re Contest of November 8, 2011, 40 A.3d 684, 698 (N.J. 2012)

(explaining that intermediate scrutiny "appears to have become the more commonly applied level of scrutiny" when analyzing the constitutionality of "requirements that candidates live in a district or municipality for a particular duration").

For instance, in <u>Ohio State Conference of N.A.A.C.P.</u>, the Sixth Circuit Court of Appeals upheld the district court's determination that the overall burden imposed by the challenged law was "significant, but not severe." <u>Ohio State Conference of N.A.A.C.P. v. Husted</u>, 768 F.3d 524, 545 (6th Cir.), <u>stay granted</u>, 135 S. Ct. 42 (2014). The court then weighed the burdens against the "<u>precise</u> interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it <u>necessary</u> to burden the plaintiff's rights." <u>Id</u>. (quotations omitted); <u>see</u> <u>Burdick</u>, 504 U.S. at 434. The court explained that the State's burden under this test is to "articulate specific, rather than abstract state interests, and explain why the particular restriction imposed is actually necessary, meaning it actually addresses, the interest put forth." <u>Ohio State Conference of N.A.A.C.P.</u>, 768 F.3d at 545; <u>see</u> <u>Obama for America</u>, 697 F.3d at 433, 434 (holding that burden upon non-military Ohio voters from challenged law "is not severe, but neither is it slight," and concluding that State's "vague interest in the smooth functioning of local boards of elections" was insufficient to justify that burden).

The law at issue in <u>Ohio State Conference of N.A.A.C.P.</u> eliminated "Golden Week," a five-day period during which Ohio voters were allowed to register and vote on the same day. <u>Ohio State Conference of N.A.A.C.P.</u>, 768 F.3d at 531-32. The State asserted that its interests in preventing voter fraud, reducing costs, and promoting uniformity justified the law's significant burden imposed upon Ohio voters. <u>Id</u>. at 546-49. However, the court determined that the State failed to present sufficient proof that its abstract interests made eliminating "Golden Week" necessary. <u>See id</u>. For instance, with regard to preventing voter fraud, the court concluded that the State had to do more than provide only "a handful of actual examples of voter fraud" and general evidence "regarding the difficulties of verifying voter registration before counting ballots." <u>Id</u>. at 547. Rather, the State had the burden of demonstrating that "eliminating Golden Week serves to prevent a 'precise' problem of voter fraud in a way that is 'necessary' to burden . . . voters, . . . as opposed to a measure that might more directly target the asserted problem without burdening voters." <u>Id</u>. Similarly, with regard to reducing costs, the court explained that because "<u>some</u> cost-saving rationale could be identified in most voting restrictions[,] . . . where more than minimal burdens on voters are established, the State must demonstrate that such costs would actually be burdensome." <u>Id</u>. at 548.

The United States Supreme Court appears to be divided regarding the issue of whether intermediate scrutiny is available in voting rights cases. <u>See</u>

8

Crawford v. Marion County Election Bd., 553 U.S. 181 (2008). Although the plurality opinion in Crawford, written by Justice Stevens and joined by Chief Justice Roberts and Justice Kennedy, did not directly address whether intermediate scrutiny was available in voting rights cases, it applied a flexible balancing test that, arguably, could encompass a test comparable to intermediate scrutiny. Id. at 191-203 (plurality opinion). In their dissent in Crawford, Justices Souter and Ginsburg expressed support for applying a test similar to intermediate scrutiny to voting rights cases. See id. at 209-10 (Souter, J., dissenting). These justices opined that "a State may not burden the right to vote merely by invoking abstract interests, be they legitimate or even compelling, but must make a particular, factual showing that threats to its interests outweigh the particular impediments it has imposed." Id. at 209 (citation omitted). They explained that, because voting rights cases involve two competing, legitimate interests (the fundamental right to vote, on the one hand, and the right of States to regulate elections, on the other hand), the Court has "avoided preset levels of scrutiny in favor of a sliding-scale balancing analysis," under which "the scrutiny varies with the effect of the regulation at issue." Id. at 210. By contrast, in their concurrence, Justices Scalia, Thomas, and Alito opined that there are only two levels of scrutiny for election laws – strict scrutiny for severe restrictions and rational basis for "nonsevere, nondiscriminatory restrictions." Id. at 204-05 (Scalia, J., concurring) (referring to the "two-track approach" to voting rights cases).

We believe that the flexible standard that we adopted in Akins includes a test that is similar to intermediate scrutiny. Under that test, the State must "articulate specific, rather than abstract state interests, and explain why the particular restriction imposed is actually necessary, meaning it actually addresses, the interest set forth." Ohio State Conference of N.A.A.C.P., 768 F.3d at 545; cf. Ass'n of People with Disabilities v. Herrera, 690 F. Supp. 2d 1183, 1220 (D.N.M. 2010) (to respond to a challenge under the First Amendment of the Federal Constitution to voter registration law, State must do more than assert that its regulatory interests are important), reconsideration granted on other grounds, 2010 WL 3834049 (D.N.M. July 28, 2010); Cmty. Res. for Justice, 154 N.H. at 762 (to meet burden under intermediate scrutiny, State "may not rely upon justifications that are hypothesized or invented post hoc in response to litigation, nor upon overbroad generalizations" (quotations omitted)).

Because we have held that the burden in the instant case is unreasonable and because we assume, without deciding, that it is not severe, we apply this intermediate scrutiny test. The only governmental interest the State has advanced on appeal is its interest in complying with HAVA. As the petitioners rightly assert, however, this interest was not the State's actual interest in adopting Laws 2012, 285:2. Laws 2012, 285:2 had its genesis as Senate Bill (SB) 318, which the legislature ultimately enacted by overriding the Governor's veto. See N.H.H.R. Jour. 1773-74 (2012). Complying with HAVA is

not among the reasons for enacting SB 318 articulated in the legislative history.  See N.H.H.R. Jour. 1452 (2012).  The State erroneously relies upon the legislative history of the 2003 legislation that made similar language part of the voter registration form.  Nothing in the legislative history of the 2003 law establishes the legislature's actual interest when it enacted the 2012 law nine years later.  Thus, the State relies upon a justification that appears to have been "invented post hoc in response to [this] litigation."  Cmty. Res. for Justice, 154 N.H. at 762 (quotation omitted).

Moreover, even if complying with HAVA had been the State's actual interest in enacting Laws 2012, 285:2, the State has failed to establish that the challenged language is actually necessary or that it actually addresses that interest.  As the State conceded at oral argument, no provision of HAVA requires the challenged language to be included in the voter registration form.  Rather, HAVA, which was originally enacted in 2002, requires each State to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State."  52 U.S.C.A. § 21083(a)(1)(A).  In addition, HAVA requires that the statewide voter registration list "be coordinated with other agency databases within the State." 52 U.S.C.A. § 21083(a)(1)(A)(iv).  HAVA provides that the State's chief election official and the State official responsible for the motor vehicle authority must "enter into an agreement to match information" in the statewide voter registration system "with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration."  52 U.S.C.A. § 21083(a)(5)(B)(i).  Under HAVA, "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number or, if the applicant lacks a current and valid driver's license, the last four digits of the applicant's social security number.  52 U.S.C.A. § 21083(a)(5)(A)(i).

Thus, not only has the State failed to establish that the challenged language is necessary to comply with HAVA, but it also has failed to demonstrate that the challenged language actually addresses HAVA compliance.  Accordingly, because the challenged language unreasonably burdens the fundamental right to vote, and because, even if we assume that the burden is not severe, the State has failed to advance a sufficiently weighty interest to justify the language, we affirm the trial court's determination that the challenged language violates Part I, Article 11 of the State Constitution.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

10