# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0259, <u>City of Dover & a. v. Secretary of State & a.</u>, the court on June 4, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The plaintiffs, the Cities of Dover and Rochester, Debra Hackett, Rod Watkins, Kermit Williams, Eileen Ehlers, Janice Kelble, Erik Johnson, Deborah Sugerman, Susan Rice, Douglas Bogen, and John Wallace, appeal an order of the Superior Court (<u>Howard</u>, J.) denying their cross-motion for summary judgment, and granting summary judgment for the defendants, the State of New Hampshire and the Secretary of State. The plaintiffs challenge under Part II, Article 11 of the New Hampshire Constitution the decennial redistricting of the New Hampshire House of Representatives following the 2020 federal census. We conclude that the plaintiffs have not met their burden of showing that the Legislature had no rational or legitimate basis for enacting the redistricting plan and further conclude that the enacted plan was within the bounds of the Legislature's discretion. Accordingly, we affirm.

The following facts are undisputed and are drawn from the trial court order and the summary judgment record. In 2021, as part of the redistricting process, House Bill 50 (HB 50) was enacted into law as RSA 662:5. <u>See</u> Laws 2022, 9:1; RSA 662:5 (Supp. 2024). During the legislative process, a non-partisan group called "Map-a-Thon" submitted a House redistricting plan to the Legislature. Map-a-Thon's plan provided dedicated House seats to 15 towns and wards that did not receive a dedicated House seat in the enacted plan. Map-a-Thon's plan also changed the makeup of other districts throughout each county at issue.

The plaintiffs challenged RSA 662:5, arguing that it violated Part II, Article 11 of the New Hampshire Constitution, and sought declaratory and injunctive relief. <u>See</u> N.H. CONST. pt. II, art. 11 (requiring a dedicated district for each town and ward within a certain population deviation "from the ideal population"). The defendants moved to dismiss and the trial court denied the motion. The parties then filed cross-motions for summary judgment. The trial court granted the defendants' motion and denied the plaintiffs' motion. The trial court concluded that it need not determine what constitutes a violation of Part II, Article 11 of the New Hampshire Constitution's "dedicated district requirement" because the plaintiffs had "failed to meet their burden to

establish the lack of a rational or legitimate basis for the Legislature's decision to enact the map codified in RSA 662:5." This appeal followed.

The plaintiffs' appeal is limited to the redistricting plan for the counties in which the trial court found the plaintiffs had standing — Strafford, Merrimack, and Hillsborough. The Map-a-Thon plan results in a net gain of six dedicated districts in these counties. However, under the Map-a-Thon plan, the Town of Durham loses its dedicated district.[1] Part II, Article 11 of the New Hampshire Constitution provides, in relevant part, that:

> When the population of any town or ward, according to the last federal census, is within a reasonable deviation from the ideal population for one or more representative seats the town or ward shall have its own district of one or more representative seats.

N.H. CONST. pt. II, art. 11. It is undisputed that neither the Map-a-Thon plan nor RSA 662:5 creates a dedicated district for every qualifying ward and town as required by Part II, Article 11 of the New Hampshire Constitution.

Indeed, the parties agree that it is impossible to create a House map that complies with both the requirements of Part II, Article 11 of the New Hampshire Constitution and the other state and federal constitutional requirements that all redistricting plans must satisfy. Additionally, the parties extensively cite City of Manchester v. Secretary of State, 163 N.H. 689 (2012). In City of Manchester, 163 N.H. at 694, 702, the petitioners challenged the House redistricting plan that the Legislature enacted in 2012, arguing that the Legislature erred by enacting a plan that violated Part II, Article 11 of the State Constitution because it did not maximize the number of towns and wards with dedicated districts. We recognized that it was impossible to fully comply with Part II, Article 11 and also satisfy other state and federal constitutional requirements. Id. at 706. The redistricting plan at issue in City of Manchester hewed more closely to equal protection requirements under the State and Federal Constitutions than alternative plans proposed by the petitioners, but it did not maximize the number of districts that satisfied the requirements of Part II, Article 11. See id. at 702. We held that the petitioners failed to meet their burden of demonstrating that the Legislature lacked a rational or legitimate basis when it enacted the redistricting plan. See id. at 704.

The plaintiffs, nonetheless, argue that Part II, Article 11 of the New Hampshire Constitution requires the Legislature to maximize the number of

---

[1] The plaintiffs do not specifically advocate for the Map-a-Thon plan. Rather, they point to it as an example of what a plan that gives more wards and towns dedicated districts could look like and argue that any plan the legislature adopts must create dedicated districts for "at least as many eligible towns and wards as the Map-a-Thon plan does."

towns and wards with dedicated districts and that the Legislature lacked a rational or legitimate basis sufficient to justify enacting RSA 662:5. The plaintiffs argue that the only rational or legitimate basis for failing to maximize the number of towns and wards with dedicated districts is compliance with another constitutional requirement. The defendants counter that legislative policy preferences can provide a rational or legitimate basis for enacting RSA 662:5, where, as here, the Legislature's choice was between maps that did not fully comply with Part II, Article 11. The defendants reason that this was "a political decision to be made by the Legislature based on policy considerations" and that the plaintiffs' legal challenge to RSA 662:5 is a request "for this Court to substitute its judgment for the political judgment of the Legislature." We agree with the defendants.

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Guare v. State of N.H., 167 N.H. 658, 661 (2015). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

As with any statute, we must presume that the enacted plan is constitutional, and we will not declare it invalid except upon inescapable grounds. City of Manchester, 163 N.H. at 696. This means that we will not hold the redistricting statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution. Id. It also means that when doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality. Id.

> Courts generally defer to legislative enactments not only because they represent the duly enacted and carefully considered decision of a coequal and representative branch of our Government, but also because the legislature is far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon legislative questions.

> This is particularly so in the redistricting context. Our State Constitution vests the authority to redistrict with the legislative branch, and for good reason. A state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality. It is primarily the Legislature, not this Court, that must make the necessary compromises to effectuate state constitutional

3

goals and statutory policies within the limitations imposed by federal law.

Therefore, we tread lightly in this political arena, lest we materially impair the legislature's redistricting power. Judicial relief becomes appropriate only when a legislature fails to reapportion according to constitutional requisites in a timely fashion after having had an adequate opportunity to do so. Both the complexity in delineating state legislative district boundaries and the political nature of such endeavors necessarily preempt judicial intervention in the absence of a clear, direct, irrefutable constitutional violation.

Id. at 696-97 (quotations, brackets, citations, and ellipses omitted).

Because any statute passed by the Legislature is presumed constitutional, the party challenging it bears the burden of proof. Id. at 698. We review challenges to redistricting plans that may violate state constitutional mandates under a standard of review akin to the well-established rational basis standard. See id. To prevail, the plaintiffs must establish that the plan was enacted without a rational or legitimate basis. Id. Moreover, we will not reject a redistricting plan simply because the plaintiffs have developed one that appears to satisfy constitutional and statutory requirements to a greater degree than the plan approved by the Legislature. See id. Although proof that such a plan may be crafted might cast doubt on the legality of the Legislature's plan, the plaintiffs' burden is not to establish that some other more compliant plan exists, but to demonstrate the absence of a rational or legitimate basis for the challenged plan's failure to satisfy constitutional or statutory criteria. See id.

Here, the Legislature had a choice to make. On the one hand, it could enact a plan, such as RSA 662:5, that does not maximize the number of towns and wards with dedicated districts. On the other hand, it could enact a plan, such as the Map-a-Thon plan, that provides dedicated districts to more wards and towns but would deny Durham, the largest town in Strafford County, its own dedicated district and dilute the voting power of Madbury residents by placing Madbury in the same district as Durham. Given that the State Constitution allocates the primary responsibility for redistricting to the Legislature, and given the small increase in the number of towns and wards with dedicated districts in the Map-a-Thon plan, it is not for this court to decide which noncompliant plan the Legislature should have enacted. See Brown v. Sec'y of State, 176 N.H. 319, 329 (2023) ("The New Hampshire Constitution commits the authority to redistrict to the legislature."). This is a policy decision reserved to the Legislature. See City of Manchester, 163 N.H. at 704. Here, where the difference in the number of towns and wards receiving dedicated districts is de minimis and both the plan the plaintiffs provide as an example of a more compliant plan and RSA 662:5 do not fully comply with Part

4

II, Article 11 of the State Constitution, we conclude that the Legislature's policy preferences are a rational and legitimate basis for enacting RSA 662:5.

Legislative "[r]edistricting is a difficult and often contentious process." Id. at 706 (quotation omitted). "A balance must be drawn." Id. "Trade-offs" must be made. Id. (quotation omitted). The plaintiffs have not persuaded us that the trade-offs the Legislature made in enacting RSA 662:5 were unreasonable. See id. Accordingly, we conclude that the plaintiffs have not met their burden of demonstrating that the Legislature had no rational or legitimate basis for enacting RSA 662:5. We have considered the plaintiffs' remaining arguments, and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

5